**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **UNITED STATES OF AMERICA** |
| v. |
| **ARNOLD JACKSON**, |
| Defendant. |

Case No. 1:19-cr-00347 (TNM)

**<u>MEMORANDUM AND ORDER</u>**

Following his guilty plea for unlawful possession with intent to distribute cocaine, the

Court sentenced Arnold Jackson to 48 months of confinement.  Judgment at 1–2,[1] ECF No. 40;

*see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A).  Now Jackson has moved for compassionate release to

home confinement, arguing that his diabetes, asthma, sleep apnea, and obesity place him at high

risk if he contracts COVID-19.  Def.'s Mot., ECF No. 46.  The Government opposes Jackson's

motion.  Gov't Opp'n, ECF No. 49.  For the reasons explained below, the Court denies the

motion.

**I.**

In September 2018, Metropolitan Police Department ("MPD") officers received a

confidential tip that Jackson was selling crack cocaine out of his vehicle in a Southwest

Washington, D.C., 7-11 parking lot.  Acting on that tip, the officers arrested Jackson in

possession of 49 grams of cocaine base, 27 grams of methamphetamine, about one gram each of

heroin and oxycodone, and drug paraphernalia including Ziploc baggies and a scale.  Gov't

Opp'n at 2; Crim. Compl. at 2, ECF No. 1.  MPD then released Jackson and re-arrested him in

---

[1]  All page citations refer to the page numbers that the CM/ECF system generates.

April 2019.  Arrest Warrant, ECF No. 4.  Eventually Jackson pled guilty, and this Court sentenced him to 48 months of incarceration for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C).  Judgment at 1–2.  Since his sentencing, Jackson has been incarcerated at the Central Virginia Regional Jail ("CVRJ") awaiting designation to a Bureau of Prisons ("BOP") facility.  But because of measures taken to mitigate the spread of COVID-19, the BOP has reduced inmate movement.  There is no telling when Jackson will transfer to BOP custody.[2]

When Jackson committed this offense, he was on supervised release from a 2003 conviction in the Western District of Virginia for Conspiracy to Distribute and Possession with Intent to Distribute Cocaine Base.  *United States v. Jackson*, No. 5:02-cr-30020 (W.D. Va. Mar. 15, 2002).  So after his sentencing here, he had to answer there for violating the terms of his release.  Several months ago, Chief Judge Urbanski of that district sentenced Jackson to 12 months imprisonment.  Judgment, *United States v. Jackson*, No. 5:02-cr-30020 (W.D. Va. Mar. 12, 2020), ECF. No. 1511.

Then last month, Jackson moved for Compassionate Release in the Western District of Virginia—like he has done here.  Def.'s Mot., *United States v. Jackson*, No. 5:02-cr-30020 (W.D. Va. May 6, 2020), ECF. No. 1515.  There he argued that the combination of the global pandemic and his compromised health made him eligible for early release.  *Id*. at 1.  Chief Judge Urbanski agreed, and he ordered Jackson to home confinement for the rest of his sentence.[3]

---

[2]  While he at the CVRJ, Jackson remains in the custody of the U.S. Marshals Service.  *See* 28 CFR § 0.111(k).

[3]  That opinion was clear that it could not affect the 48-month sentence that this Court imposed in January.  Mem. Op. at 1 n.1, *United States v. Jackson*, No. 5:02-cr-30020 (W.D. Va. May 26, 2020), ECF No. 1528.

Mem. Op., *United States v. Jackson*, No. 5:02-cr-30020 (W.D. Va. May 26, 2020), ECF No. 1528.

Jackson now turns to this Court to seek compassionate release under the same statute, 18 U.S.C. § 3582(c)(1)(A).  Def.'s Mot.  Jackson asks that his sentence be reduced to home confinement at his mother's home in Washington, D.C.  *Id.* at 1, 26.  The government opposes any sentence reduction.  *See* Gov't Opp'n.  Now that Jackson has replied, ECF No. 50, this matter is ripe for resolution.

## II.

A court may reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, . . . it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  Under the Commission's applicable policy statement, a court may reduce a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that . . . (1)(A) Extraordinary and compelling reasons warrant the reduction . . . (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) The reduction is consistent with this policy statement."  USSG § 1B1.13.[4]

As the movant, Jackson has the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)(i).  *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)

---

[4] Though USSG § 1B1.13 refers only to compassionate release motions filed by the BOP on a defendant's behalf, the parties agree that it applies equally to motions filed by a defendant.  *See* Gov't Opp'n at 8 & n.2; Def.'s Reply at 7 & n.11.  Section 1B1.13 was last amended in November 2018, one month before defendants gained the ability to file motions for compassionate release.  *See* First Step Act, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018).

(noting that the defendant has the burden of establishing that he is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2)).

### III.

### A.

Before reaching the merits of Jackson's claims, the Court must address two potential jurisdictional barriers.

### 1.

The first is the statute's administrative exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A). There, the statute says that any defendant who seeks compassionate release must first exhaust his administrative rights with the BOP *or* wait until 30 days have elapsed since the warden of the facility received the request.

Jackson acknowledges he has not done either. But not for lack of trying. Jackson says he submitted a request for compassionate release to officials at the CVRJ, and that they told him they could not process his request "because he was not in a Bureau of Prisons facility." Def.'s Mot. at 12. So Jackson asks the Court to waive the exhaustion requirement. *Id*. at 12–19. The Government apparently takes no position about Jackson's failure to exhaust his administrative remedies. *See generally* Gov't Opp'n. Even so, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

Following the teachings of the Supreme Court and the D.C. Circuit, the Court looks for a clear statement in the statutory text that the rule is jurisdictional. *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006). "While

the existence of an administrative remedy automatically triggers a non-jurisdictional exhaustion inquiry, jurisdictional exhaustion requires much more." *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C. Cir. 2004). "In order to mandate exhaustion, a statute must contain "'[s]weeping and direct' statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the exhaustion requirement is treated as an element of the underlying claim." *Id*. (quoting *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975)). Absent such clear statutory language, courts "treat the restriction as nonjurisdictional in character." *Arbaugh*, 546 U.S. at 516.

In *Auburn Regional*, the Supreme Court found no jurisdictional barrier in a statute saying that a Medicare provider "'may obtain a hearing' . . . if 'such provider files a request for a hearing within 180 days after notice of the intermediary's final determination.'" 568 U.S. at 154 (citation omitted). Nor did the Supreme Court find the statute in *Henderson* to be jurisdictional, even though it said in stronger terms that a veteran seeking court review of an administrative decision "*shall* file a notice of appeal with the Court within 120 days." 562 U.S. at 438 (emphasis added). Indeed, the Supreme Court has "repeatedly held that filing deadlines ordinarily are not jurisdictional" but are "'quintessential claim-processing rules.'" *Auburn Regional*, 568 U.S. at 154 (quoting *Henderson*, 562 U.S. at 435).

And here, the Court finds that § 3582(c)(1)(A) bears the marks of those statutes the Supreme Court found to be non-jurisdictional. Section 3582(c)(1)(A) says that a defendant may file a motion "after the defendant has fully exhausted all administrative rights to appeal" with the BOP "or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Like the preconditions in *Auburn Regional* and *Henderson*, § 3582(c)(1)(A) requires any filing defendant to first meet the statutory requirements. But there is no clear statement from Congress "that the rule is jurisdictional." *Auburn Reg'l*, 568 U.S. at

153. "Tellingly, the word 'jurisdiction' or its variation never appears" in this section of the statute. *United States v. Haney*, 19-cr-541 (JSR), 2020 U.S. Dist. LEXIS 63971, at *6 (S.D.N.Y. Apr. 13, 2020). More, § 3582 is "not part of a jurisdictional portion of the criminal code but part of the chapter dealing generally with sentences of imprisonment." *United States v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015). So the Court will "presume exhaustion is non-jurisdictional." *Avocados Plus*, 370 F.3d at 1248.

Other courts agree. For example, another judge in this District concluded that § 3582(c)(1)(A)'s "30-day rule is not jurisdictional, but rather is a claims processing rule that determines who moves for release and when." *United States v. Jennings*, 18-cr-17 (TSC), 2020 U.S. Dist. LEXIS 70800, *5 (D.D.C. Apr. 22, 2020). And citing *Auburn Regional* and *Arbaugh*, a judge in the Southern District of New York reached the same conclusion. *Haney*, 2020 U.S. Dist. LEXIS 63971, at *6.

Yet just because the § 3582(c)(1)(A) exhaustion requirement is non-jurisdictional, it does not necessarily follow that it may be waived. *See Henderson*, 562 U.S. at 435 (referring to certain claim-processing rules as "important and mandatory"). The Supreme Court and the D.C. Circuit have emphasized that there are times when waiver is appropriate when "the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further.'" *Avocados Plus*, 370 F.3d at 1247 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)).

This case presents the unique circumstances that justify waiver. Most importantly, Jackson is not in BOP custody where he can pursue his administrative remedies. *See id.* (noting that courts may excuse exhaustion when, among other reasons, the agency lacks authority to act). And when he tried to do so, the CVRJ officials denied his request, claiming a lack of authority.

Def.'s Mot. at 12.  It is unclear when he will move to a BOP facility.  And as long as he is at the

CVRJ, it is impossible for Jackson to satisfy the § 3582(c)(1)(A) exhaustion requirement.  More,

the Government has not objected to Jackson's failure to exhaust.  *See generally* Gov't Opp'n.  So

there does not appear to be any countervailing government interest in "efficiency or

administrative autonomy."  *See McCarthy*, 503 U.S. at 146.  The facts of this case fully justify

waiver of the exhaustion requirement in § 3582(c)(1)(A).

### 2.

The second potential barrier to the Court's jurisdiction is Jackson's currently pending

appeal of his sentence to the D.C. Circuit.  *See* Not. of Appeal, ECF No. 43.  Neither party

briefed this issue, but again the Court has an independent obligation to "raise and decide

jurisdictional questions."  *Henderson*, 562 U.S. at 434.

At first blush, Jackson's appeal appears to strip the Court of jurisdiction.  "The filing of a

notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of

appeals and divests the district court of its control over those aspects of the case involved in the

appeal."  *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).  But that is not the

end of the story.

Later Supreme Court precedent and the Federal Rules of Criminal Procedure have

clarified that district courts maintain some authority over motions filed during an appeal.  In

*United States v. Cronic*, the defendant filed a motion for a new trial in the district court, under

Rule 33.  466 U.S. 648, 667 n.42 (1984).  The district court "denied that motion for lack of

jurisdiction because the case was pending on direct appeal at the time."  *Id.*  In other words, the

district court's jurisdictional holding followed the general rule in *Griggs*.  *See* 459 U.S. at 58.

But despite *Griggs* (indeed without citation to it), the *Cronic* Court declared the district court's

ruling "erroneous." *Cronic*, 466 U.S. at 667 n.42.  Instead, citing a host of appellate court decisions, the Supreme Court said that "[t]he District Court had jurisdiction to entertain the motion and either deny the motion on its merits, or certify its intention to grant the motion to the Court of Appeals, which could then entertain a motion to remand the case." *Id*. (citations omitted).

And that exception remains alive today, codified in the Federal Rules of Criminal Procedure.  So on a timely motion "for relief that the court lacks the authority to grant because of an appeal . . . the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a).  And at least one judge in this District has dealt with this precise issue in ruling on a motion for compassionate release.  *See United States v. Hammond*, 02-cr-294 (BAH), 2020 WL 1891980 (D.D.C. Apr. 16, 2020) (entering "indicative ruling" that the motion for compassionate relief would be granted on remand). Following Rule 37(a), the Court proceeds to the merits of Jackson's motion confident of its jurisdiction.

**B.**

A defendant seeking release under § 3582(c)(1)(A)(i) has a steep hill to climb.  First, he must show that "extraordinary and compelling reasons" warrant it.  18 U.S.C. § 3582(c)(1)(A)(i). Even if he can get past that hurdle, he must also show that release "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*  The applicable policy statement requires him to show that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  USSG § 1B1.13(2).  And even then, he must show that the sentencing factors in 18 U.S.C. § 3553(a) justify release.  *See United States v.*

*Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (affirming decision to deny compassionate release based on the balance of factors in § 3553(a), even though there were "extraordinary and compelling reasons" for release and the defendant posed no danger).[5]

Jackson argues that there are "extraordinary and compelling reasons" for release; that he poses no danger to the community; and that the factors in § 3553(a) favor his release. *See* Def.'s Mot. at 19–25. The Court disagrees.

### 1.

To begin with, Jackson has not shown that "extraordinary and compelling" reasons justify release. The Court begins with the first application note in USSG § 1B1.13. Under it, one "extraordinary and compelling" reason is when the defendant suffers from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, comment (n.1(A)(ii)(I)). There can also be "extraordinary and compelling reason[s] other than, or in combination with" the specific reasons listed in the application note. *Id.* § 1B1.13, comment (n.1(D)).

The Government concedes that if an inmate has "a chronic medical condition that has been identified by the [Centers for Disease Control] as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of 'extraordinary and compelling reasons.'" Gov't Opp'n at 10–11. But the Government says COVID-19 alone,

---

[5] Another judge of this District has suggested that a finding of dangerousness under § 1B1.13(2) is not an independent ground to deny a motion under § 3582(c)(1)(A)(i). *See United States v. Johnson*, No. 15-cr-125 (KBJ), 2020 WL 2515856, at *4 n.3 (D.D.C. May 16, 2020). But as that judge recognized, considering a defendant's dangerousness is, at the very least, part of the balancing of factors under 18 U.S.C. § 3553(a). *See id.* Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(C). Indeed, these factors dovetail with those relevant to a finding of dangerousness under 18 U.S.C. § 3142(g), which include "the nature and circumstances of the offense charged" and "the history and characteristics of the person." *Id.* § 3142(g)(1), (3).

"which poses a general threat to every non-immune person in the country," cannot "alone provide the basis for a sentence reduction." *Id.* at 10.

Jackson, for his part, argues that the "extraordinary and compelling" reasons warranting release "are not restricted to finite circumstances." Def.'s Mot. at 21. He argues that his "multiple health conditions, combined with the rapid spread of COVID-19 within BOP, despite substantial efforts to control it, warrant a sentence reduction." *Id*. at 24. This argument is unavailing.

The Court does not take lightly the COVID-19 global and national health emergency. As of May 26, the BOP reported that 4,757 inmates and staff have tested positive for the virus, and 64 inmates have died from it. *Id.* at 7. Pretrial detainees, presentencing detainees, and inmates like Jackson have filed dozens of motions in this District alone, with extensive allegations about the dangers of the viral pandemic. The Government does not contest the threat of this "extremely dangerous illness." Gov't Opp'n at 3. And, like other judges in this District and across the country, the Court takes notice of the real and serious threat that the COVID-19 pandemic poses.

Jackson insists that the BOP has shown an inability to contain the spread of the virus. Much of his motion is focused on the alleged shortcomings of the BOP's response to the pandemic. Def.'s Mot. at 5–12. In response, the Government notes the BOP's measures to protect its inmates and staff. Gov't Opp'n at 3–6. For example, it is actively screening and quarantining inmates, limiting movement within its facilities, and has stopped social visits. *Id.* at 3–5.

But these arguments focused on the BOP are of little consequence while Jackson remains at the CVRJ. If Jackson moves to a BOP facility, he is free to follow the § 3582(c)(1)(A)

10

process to raise concerns about the appropriateness of his continued incarceration given the conditions at that facility.  But the Court will not order his release based on conditions in BOP facilities writ large, especially when he is not incarcerated at a BOP facility and may not be for some time.

Jackson also argues—though in far less detail—that the CVRJ's measures are inadequate. Def.'s Mot. at 3–5.  But he admits that the CVRJ "has put measures in place to address the spread of the virus."  Def.'s Mot. at 4.  So all "incoming prisoners are . . . assessed and held for at least three days in booking."  *Id*. (cleaned up).  Jackson insists that only "systematic testing" will be enough to protect him.  *Id*. at 5.  And there, he claims that the CVRJ falls short.  But notably absent from Jackson's argument is any claim that inmates in the CVRJ have contracted and spread COVID-19.  *See id*. at 3–5.  Instead, he argues that a new inmate *could* evade detection because the three-day booking quarantine is too short to guarantee detection.  *Id*. at 4.

Perhaps.  But this is all speculative.  To be sure, this does not mean that the CVRJ will never have a positive case, but it suggests that the protective measures at that facility are working.  Jackson's generalized allegations about the CVRJ's response to the pandemic are not enough to justify release.

Jackson—who is 47 years old—stresses that four factors "put him at greater risk both of contracting COVID-19 and of experiencing a severe form of the illness, including death"— diabetes, asthma, sleep apnea, and obesity.  *Id.* at 1; *see also* Sealed Doc., ECF No. 48 (medical records).  The Court is sympathetic to Jackson's situation and does not take lightly his fear of contracting the virus.  But these circumstances still do not present "extraordinary and compelling reasons" for ordering Jackson to home confinement.

For one, Jackson "has not provided the Court with any information regarding the number of infected inmates, COVID deaths, or any specific information regarding the living conditions" at the CVRJ.  Gov't Opp'n at 7.  He also "appears to be receiving his prescribed medication at the facility, as he has not claimed otherwise."  *Id*.  So the Court doubts that Jackson's risk of contracting the virus is as high as he suggests.

More, as several judges have observed, a defendant is at risk of contracting COVID-19 whether he is in prison or not.  *See, e.g.*, Minute Order, *United States v. Oseguera Gonzalez*, 20-cr-40 (BAH) (D.D.C. Mar. 24, 2020).  Indeed, Jackson's request to be released from CVRJ—where he reports no COVID-19 cases—to home confinement in Washington, D.C.—where there are many—is particularly unpersuasive.  So although Jackson focuses on his risk *if* he contracts the virus, he has not shown a heightened risk that he *will*.  *See* Def.'s Reply at 6–9.

And if the Court releases Jackson to home confinement, his status could pose "heightened safety risks . . . to the probation officers who would be tasked with monitoring his behavior." *United States v. Lee*, 19-cr-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020). Probation officers are currently unable to conduct many of their normal in-person community contacts and monitoring services.  So if the Court released Jackson, there is a risk that he would not be subject to adequate supervision during the pandemic.

That is especially problematic here, because as explained below, Jackson pled guilty to a serious crime and still poses a danger to the community.  If a defendant still poses a danger to the community or if the balance of factors under 18 U.S.C. § 3553(a) favor continued imprisonment, these are independent reasons to deny a motion for compassionate release.  *See* USSG § 1B1.13(2); *Chambliss*, 948 F.3d at 693–94.  But these considerations still factor into whether there are "extraordinary and compelling reasons" for a sentence reduction in the first place.

12

Under the statute, the Court may reduce a sentence "if it finds that . . . extraordinary and compelling reasons warrant such a reduction" "*after* considering the factors set forth in [18 U.S.C. § 3553]," and these factors include "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. §§ 3553(a)(1), 3582(c)(1)(A)(i) (emphasis added); *see also* USSG § 1B1.13(1)(A).

This holistic approach is analogous to how courts analyze whether the "temporary release" of a pretrial detainee is "necessary . . . for [a] compelling reason."  18 U.S.C. § 3142(i). Other judges in this District have noted that the factors in 18 U.S.C. § 3142(g), which include "the nature and circumstances of the offense charged" and "the history and characteristics of the person" inform whether there is a "compelling reason" that warrants release under § 3142(i). *See, e.g.*, *United States v. Otunyo*, No. 18-cr-251 (BAH), 2020 WL 2065041, at *8 (D.D.C. Apr. 28, 2020).  So too here.  The Court thus finds that the seriousness of Jackson's offense and the danger he poses, *see infra* Sections III.B & III.C, cut against the existence of "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

Given all these circumstances, Jackson has not shown "extraordinary and compelling reasons" that justify reducing his sentence to time served, and this is a sufficient reason to deny his motion.

**2.**

In any event, a sentence reduction is not warranted because Jackson still poses "a danger to the safety of . . . the community, as provided in 18 U.S.C. § 3142(g)."  USSG § 1B1.13(2). The factors under § 3142(g) are (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the

person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

Jackson claims that he does not pose a danger to the community. Def.'s Mot. at 25; Def.'s Reply at 9–10. His primary argument is that the MPD's decision to release him for six months before arresting him again proves that he must not have been a danger. *Id.* The Court is unconvinced. For one, MPD's decision about when and whether to arrest Jackson was not made based on the § 3142(g) factors and carries little if any weight in the Court's application of this statutory test. More, before Jackson pled guilty to any charges, he waived his opportunity to rebut a dangerousness finding at a detention hearing. *See* Def.'s Mot. to Waive Prelim. Hr'g, ECF No. 7. So the Government never made formal arguments for his detention, and the Court never entered findings of fact. *See* Order, ECF No. 8. But in his waiver, Jackson explicitly acknowledged that he was "either a danger to the community or a flight risk." Def.'s Mot. to Waive Prelim. Hr'g at 2.

And the Court agrees with Jackson's early concession. The nature and circumstances of Jackson's offense continue to favor detention. Although Jackson's crime may not have been violent, he possessed various drugs and drug paraphernalia at the time of his arrest, and he pled guilty to possession with intent to distribute cocaine base. Judgment at 1–2.

Jackson's history and characteristics also favor detention. Jackson was on supervised release from his Western District of Virginia conviction at the time of this offense. *United States v. Jackson*, No. 5:02-cr-30020 (W.D. Va. Mar. 15, 2002). There, Jackson was a primary supplier for a drug trafficking conspiracy that dealt over 30 kilograms of crack cocaine throughout the metropolitan D.C. area. *Id.*; *see* Final Presentence Investigation Report at 9, ECF No. 33.

Although that conviction was more than 15 years old at the time of his arrest, it testifies to the need for his detention.

Likewise, the fourth factor—Jackson's dangerousness—favors his continued detention, given his significant danger to the community.  Even if Jackson was "no more than a street level dealer," Def.'s Reply at 9, a drug dealer need not himself be violent to fuel violence in the community, *United States v. Thomas*, 871 F.2d 1149 (D.C. Cir. 1989) ("Not only the drugs themselves, but those who engage in trafficking pose a threat to the community."); *United States v. Cruz-Hernandez*, 422 F. Supp. 3d 157, 162 (D.D.C. 2019).  Jackson conceded early that his detention was warranted, and he has offered no persuasive reason why the Court should find that he no longer poses a danger.  *See* Def.'s Mot. at 25; Def.'s Reply at 9–10.

### 3.

Finally, based on the factors in 18 U.S.C. § 3553(a), Jackson's full 48-month sentence remains appropriate and "not greater than necessary" to comply with the purposes of sentencing. This too is enough to deny Jackson's motion.  *See Chambliss*, 948 F.3d at 693–94.

The relevant considerations here largely dovetail with the factors the Court has already discussed in relation to the danger that Jackson poses.  *See supra* note 4.  While Jackson presents some mitigating factors such as his need for medical care, his cooperation with the Government here, and his age, the nature and circumstances of his crime strongly favor continued incarceration.  18 U.S.C. § 3553(a)(1).  He was a supplier of crack cocaine.  Even though there was no evidence that Jackson was violent, this is still a serious offense that begets violence and poisons the community.  And to the extent that he cooperated with the Government, he already received the benefit of that cooperation through his plea agreement.  *See* ECF No. 28.  His

cooperation did not rise to the level of substantial assistance, nor does his cooperation persuade the Court that he is unlikely to re-offend.

In short, anything less than a 48-month sentence would not "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment," or "afford adequate deterrence." *Id.* § 3553(a)(1), (2)(A)–(B). And given the danger that Jackson poses to the community, releasing him would conflict with the goal of "protect[ing] the public from further crimes of the defendant." *Id.* § 3553(a)(2)(C). The balance of factors under § 3553(a) still supports a prison sentence of 48 months.

## C.

The Court recognizes the unusual circumstances of this motion, in which another judge has already granted Jackson's compassionate release for another offense. *See* Mem. Op., *United States v. Jackson*, No. 5:02-cr-30020 (W.D. Va. May 26, 2020). Still, Chief Judge Urbanski's opinion only addressed Jackson's supervised release violation and not this drug offense. *See id.* at 1 n.1. Those differences compel a different result.

*First*, Jackson is serving a much longer sentence for this offense than for his violation of supervised release: four times as long. *Compare id.* (12 months) *with* Judgment (48 months). And this is not just a matter of comparing calculations. The length of the two sentences reflects a substantial difference in the nature and seriousness of Jackson's offenses.

*Second*, unlike in the Western District of Virginia, where he was originally sentenced when he "had no prior criminal history," Mem. Op. at 9, *United States v. Jackson*, No. 5:02-cr-30020 (W.D. Va. May 26, 2020), here Jackson pled guilty and was sentenced after re-offending with a second drug offense, *see* Final Presentence Investigation Report.

*Third*, while this might have been a non-violent offense, Jackson's repeat offenses still show his danger to society. *See id.*; Judgment.  Jackson's return to drug dealing was a sign of his indifference to the harm he was causing to the community.

*Finally*, although Chief Judge Urbanski credited Jackson's cooperation with the Government in this case, this Court is in a better position to weigh the value of that cooperation. *See* Mem. Op. at 9, *United States v. Jackson*, No. 5:02-cr-30020 (W.D. Va. May 26, 2020).  And after previously hearing from Jackson and the Government about the extent of his efforts to cooperate, the Court does not find that Jackson should receive any more credit beyond the benefit he already received in his plea bargain.

In sum, the Court finds that Jackson's conviction here for possession with intent to distribute cocaine base compels a different result than the Western District of Virginia reached about Jackson's violation of supervised release.

**IV.**

For all these reasons, it is hereby

**ORDERED** that the Defendant's Motion for Compassionate Release is DENIED.[6]

Dated: June 19, 2020                                          _____

TREVOR N. McFADDEN, U.S.D.J.

---

[6] Jackson does not request a hearing on his motion, and the Court finds one unnecessary here.  *See* LCrR 47(f).